UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LANISE BASON, #319076,

                    Petitioner,

                                              CIVIL CASE NO. 04-CV-71575-DT
v.                                            HONORABLE GERALD E. ROSEN

JOAN YUKINS,

                    Respondent.

_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

### I.      Introduction

        Petitioner Lanise Bason, a state prisoner presently confined at the Scott Correctional

Facility in Plymouth, Michigan, has filed a *pro se* petition for writ of habeas corpus under 28

U.S.C. § 2254.  Petitioner challenges her second-degree murder which was imposed following a

bench trial in the Wayne County Circuit Court in 2000.  Petitioner was sentenced to 18 to 50

years imprisonment.  In her pleadings, petitioner challenges the effectiveness of trial counsel and

the proportionality of her sentence.  For the reasons stated below, the petition for writ of habeas

corpus is denied.

### II.     Facts and Procedural History

        Petitioner's conviction stems from the death of her husband Bryant Branch in Detroit,

Michigan on February 23, 1999.  The testimony at trial revealed that Petitioner drove her car

over a berm and struck Branch while he was walking on a neighborhood sidewalk, causing his

death. She then crashed her car into a nearby tree, causing injury to herself.  Police testimony

established that the car was going 40 to 50 miles per hour when it struck Branch.  The car left

1

tracks over three or four lawns in a straight line from the street for approximately 100 feet. Civilian witnesses, including Branch's family members and mistress, testified that Petitioner and Branch had fought and argued on prior occasions, were separated, and were getting a divorce. Those witnesses also recalled that Petitioner had threatened to kill Branch and had said that if she could not have him, no one could.

During trial, the court conducted an evidentiary hearing to determine the admissibility of Petitioner's post-accident statement to police. At the conclusion of that hearing, the court found that Petitioner was heavily medicated when she spoke to police and suppressed her statement. The prosecution rested its case.

After consulting with Petitioner, defense counsel also rested and did not present any witnesses. Defense counsel argued that the death was accidental and that the prosecution failed to establish the elements of second-degree murder beyond a reasonable doubt. The trial court convicted Petitioner of second-degree murder, finding no evidence of emotional excitement which could reduce the crime to voluntary manslaughter.

Following her conviction, Petitioner, through counsel, filed a motion with the trial court to amend findings or make additional findings concerning the charges of voluntary and involuntary manslaughter. The trial court decided to conduct an evidentiary hearing on possible proofs, but during the course of that hearing decided that an evidentiary hearing on counsel's effectiveness would be more appropriate to determine whether a new trial was warranted.

The trial court subsequently sentenced Petitioner within the state sentencing guidelines to a term of 18 to 50 years imprisonment.

The trial court then conducted the evidentiary hearing on the effectiveness of counsel. At that hearing, trial counsel testified that she investigated several defenses prior to trial, including diminished capacity, heat of passion, and battered woman's syndrome. Counsel explained that

2

the diminished capacity was not supported by the facts and would not have been a defense to the general intent crime of second-degree murder. She did not think that a heat of passion defense would be successful because there was no documented abuse by Branch on the day of the incident, Petitioner had invited Branch to her home that day, and he had treated her well. She did not pursue the battered woman defense because she could find no police reports of abusive activity and the witnesses stated that they saw mutual fights between the parties.

Counsel further testified that she chose not to present additional testimony based upon her reading of the trial judge, and because she did not want damaging evidence to be admitted in rebuttal and she thought that the prosecution had not sustained its burden of proof for second-degree murder. She also believed Petitioner's statements indicating that the crash was an accident – that Petitioner was upset and only intended to confront Branch, but lost control of her car and struck him. At the close of the hearing, the trial court concluded that counsel was not ineffective and declined to grant a new trial.

Petitioner, through counsel, then filed an appeal with the Michigan Court of Appeals, asserting that trial counsel was ineffective and her sentence was disproportionate. The Michigan Court of Appeals affirmed Petitioner's conviction and sentence. *People v. Bason*, No. 230157, 2002 WL 31012614 (Mich. Ct. App. Aug. 30, 2002) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same issues, which was denied because the court was "not persuaded that the questions presented should be reviewed." *People v. Bason*, 468 Mich. 905, 661 N.W.2d 581 (2003).

Petitioner filed her initial petition for writ of habeas corpus on April 27, 2004. She subsequently filed an amended petition, asserting the following claims as grounds for relief:

> I.     She is entitled to a new trial where she had ineffective assistance
>         of counsel.

II.    The sentence imposed is disproportionate under *People v. Milbourn*, 435 Mich. 630 (1990), given the nature of the crime and the sentence imposed.

Respondent has filed an answer to the amended petition, asserting that it should be denied for lack of merit.  Petitioner has filed a reply to that answer.

## III.    Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed her habeas petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the

correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.  While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, §2254(e)(1) requires that this Court presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.   Analysis**

A.   Ineffective Assistance of Trial Counsel Claim

Petitioner first asserts that she is entitled to habeas relief because trial counsel was

5

ineffective for failing to present a viable defense to the second-degree murder charge. Respondent contends that this claim lacks merit.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must  prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  466 U.S. at 687.  Second, the petitioner must establish that the deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

In this case, the Michigan Court of Appeals determined that Petitioner was not denied

6

the effective assistance of counsel at trial under the standard set forth in *Strickland, supra*.  The

court reasoned as follows:

> Defendant first claims that she was denied the effective assistance of counsel.
> To establish a claim of ineffective assistance of counsel, "a defendant must show
> that counsel's performance fell below an objective standard of reasonableness,
> and that the representation so prejudiced the defendant as to deprive him of a fair
> trial."  *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994).  To
> demonstrate prejudice, a defendant must " 'show that there is a reasonable
> probability that, but for counsel's unprofessional errors, the result of the
> proceeding would have been different.'"  *People v Johnson*, 451 Mich 115, 122;
> 545 NW2d 637 (1996), quoting *People v LaVearn*, 448 Mich 207, 216; 528
> NW2d 721 (1995), quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct
> 2052; 80 LEd2d 674 1984).  A defendant must also overcome the strong
> presumption that the challenged action is sound trial strategy.  *In re Ayres*, 239
> Mich App 8, 21; 608 NW2d 132 (1999).
>
> Defendant contends that counsel's failure to present any defense on her behalf,
> where there was evidence to support a heat of passion, battered wife syndrome,
> or diminished capacity theory, amounted to ineffective assistance of counsel. We
> disagree.  Following the prosecution's case in chief, the trial court conducted a
> *Walker* hearing and suppressed the statement that defendant made to the police
> on the basis that defendant did not make the statement voluntarily because she
> was highly medicated when she spoke with the police.  The statement included
> possible evidence that could be damaging to defendant regarding premeditation.
> Thereafter, defense counsel rested without presenting any witnesses on her
> behalf. At the *Ginther* hearing, defense counsel testified that she rested because
> she believed that the prosecution failed to prove second-degree murder and that
> defendant would prevail on a theory of accident. Defendant did not testify at the
> *Ginther* hearing.
>
> "A defendant is entitled to have his counsel prepare, investigate, and present all
> substantial defenses."  *Ayres, supra* at 22.  A counsel's failure to raise a
> substantive defense where there is substantial evidence to support the defense
> may amount to ineffective assistance of counsel.  *People v. Moore*, 131 Mich
> App 416, 418; 345 NW2d 710 (1984).  "Where there is a claim that counsel was
> ineffective for failing to raise a defense, the defendant must show that he made a
> good-faith effort to avail himself of the right to present a particular defense and
> that the defense of which he was deprived was substantial."  *Ayres, supra*.  A
> substantial defense is one that "might have made a difference in the outcome of
> the trial."  *Id*. However, "[t]his Court is reluctant to substitute its judgment
> for that of trial counsel in matters of trial strategy, and ineffective assistance of
> counsel will not be found merely because a strategy backfires."  *Id.*
>
> First, defendant has not shown that she made a good-faith effort to avail herself
> of the right to present these defenses.  Although the record indicates that

defendant initially asserted her right to these particular defenses, the record also indicates that she acquiesced in defense counsel's decision to pursue a defense theory of accident. Therefore, defendant's claim of ineffective assistance of counsel fails in this respect. Furthermore, defendant failed to demonstrate that a defense theory of diminished capacity, battered wife syndrome, or heat of passion was a "substantial defense" in that they may have affected the outcome of the trial. *Ayres, supra*.

First, although a psychologist who testified at the *Walker* hearing concluded that defendant suffered from a diminished capacity at the time of the accident and was not criminally responsible, defense counsel properly concluded that a diminished capacity defense was implausible in this case. A defense of diminished capacity is not a defense to second-degree murder, a general intent crime. *People v Biggs*, 202 Mich App 450, 454; 509 NW2d 803 (1993). Thus, because diminished capacity is not a defense to second-degree murder, defendant was not denied the effective assistance of counsel by defense counsel's failure to assert this defense.

Defendant also failed to show that a theory that she acted in self-defense because she suffered from the battered spouse syndrome may have made a difference in the outcome of the trial. *Ayres, supra*. Expert testimony on the battered spouse syndrome is generally offered by a defendant in a homicide case when the defendant claims self-defense. *People v Christel*, 449 Mich 578, 589; 537 NW2d 194 (1995). The Court, recognizing that testimony regarding the battered spouse syndrome has been used "to explain the reasonableness of the battered spouse's perception that danger or great bodily harm is imminent," has permitted the introduction of battered spouse syndrome evidence to support a claim of self-defense. *People v Wilson*, 194 Mich App 599, 602-604; 487 NW2d 822 (1992). "[A] homicide is justified under the theory of self-defense if the defendant 'honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm.'" *Id*. at 602, quoting *People v Heflin*, 434 Mich 482, 502; 456 NW2d 10 (1990).

To admit expert testimony regarding the battered spouse syndrome, there must be a factual premise allowing a reasonable trier of fact to infer that the defendant could be a battered spouse. *Christel, supra* at 592-593 n 27. While there may have been evidence of physical fights with Bryant in the past, the existing record does not establish that defendant honestly or reasonably believed she was in imminent danger of death or great bodily harm sufficient to establish a claim of self-defense. Nothing in the record shows that defendant killed Bryant because she feared for her life or that her state of mind was so affected by systematic and continual spousal abuse characteristic of the battered spouse syndrome that she feared some imminent harm by Bryant. To the contrary, trial testimony indicated that before the killing, defendant had on many occasions sought out Bryant, was violent toward him, threatened him, and repeatedly said that she was going to kill him. Significantly, on the night before the killing, defendant contacted Bryant. He came to her house, treated her well, and did not abuse her. Moreover, a

8

review of the record indicates that the alleged abuse did not provoke defendant. Rather, the provocation stemmed from a phone call defendant made to another woman on the morning of the killing.

In sum, we conclude that the requisite factual premise did not exist to allow a reasonable trier of fact to infer that defendant feared Bryant. Expert testimony regarding the battered spouse syndrome would not have been relevant because the facts do not suggest that defendant killed Bryant in self-defense. Therefore, testimony about the syndrome would not have affected the outcome of the trial even if offered by defense counsel. Thus, defendant failed to demonstrate that she was denied the effective assistance of counsel on this ground. *Ayres, supra*.

In addition, defendant failed to demonstrate that the outcome of the trial may have differed had defense counsel pursued a "heat of passion" theory. *Id.* The elements of voluntary manslaughter are: "(1) the defendant must kill in the heat of passion, (2) the passion must be caused by an adequate provocation, and (3) there cannot be a lapse of time during which a reasonable person could control his passions." MCL 750.321; *People v Sullivan*, 231 Mich App 510, 518; 586 NW2d 578 (1998), aff'd 461 Mich 992 (2000). The trial judge, sitting as the finder of fact, found that the facts did not justify mitigating murder to manslaughter.

The provocation necessary to mitigate murder to manslaughter is that which would cause a reasonable person to lose control and act out of passion rather than reason. *Sullivan, supra* at 518. The determination of what is adequate provocation is a question of fact for the trier of fact. *Id.* The trial judge found that the emotional excitement had been going on for a long time, there were arguments back and forth, and Wynter and defendant had been talking on the phone for some time, and concluded that she had "no idea what had happened just prior to the time that the defendant put her foot on that gas and revved that car up." Evidently, the court found the record devoid of evidence regarding adequate provocation.

There were no witnesses other than defendant who could testify regarding what occurred before the killing. In concluding that the facts did not warrant a finding of manslaughter, the court emphasized that the couple had been arguing for quite some time and that defendant knew of Bryant's relationship with Wynter. Nothing in the record indicates that anything, other than the same situation she had been coping with for a lengthy period, compelled defendant to go in search of Bryant.

Furthermore, the trial court concluded that, even if they had an argument before defendant hit Bryant, sufficient time had passed to constitute a "cooling off" period during which time a reasonable person could control her passions. Throughout the sequence of events, defendant had time to take a second look before she acted. Trial evidence indicated that Wynter received a voice mail message from Bryant around 9:00 or 10:00 a.m. Thereafter, Bryant walked

9

down the street on the sidewalk toward the house where Wynter was staying, which happened to be a house in the vicinity of defendant's home. As Bryant was walking on the sidewalk, defendant's vehicle jumped the curb and hit Bryant at approximately 10:30 a.m. In sum, we find that defendant failed to demonstrate that the outcome of the trial may have differed had defense counsel pursued a "heat of passion" theory.

Defendant also contends that defense counsel's failure to move for a directed verdict constitutes ineffective assistance of counsel. In deciding whether to grant a motion for a directed verdict, the court must evaluate the evidence in the light most favorable to the prosecution. *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001). Defendant was not prejudiced by defense counsel's failure to move for a directed verdict because the court, at the *Ginther* hearing, indicated that a motion for a directed verdict would not have affected the outcome of the trial, because there was "entirely too much evidence for a ... directed verdict."

Given the compelling evidence against defendant in this case, defense counsel was faced with a choice among several weak defenses. The record indicates that defense counsel acted diligently in this case. She interviewed possible witnesses, communicated with defendant on a regular basis, and investigated the plausible defense theories. At the *Ginther* hearing, defense counsel explained that she considered several defenses. When she rested, she thought that she had won on the theory of accident and that the prosecution had failed to prove its case as to second-degree murder. She also testified that based on the evidence and the judge's comments in chambers, that the judge did not believe any of the prosecution witnesses. Hence, she was certain she should rest at that time. Her explanations indicate that counsel made a strategic decision to proceed on an accident theory and not to pursue the alternate theories. The fact that defense counsel's strategy did not work does not render its use ineffective assistance of counsel. *Ayres, supra*. Although defense counsel testified that she should have taken a break before she rested, this Court does not assess counsel's performance with the benefit of hindsight. *People v Rice* (On Remand), 235 Mich App 429, 445; 597 NW2d 843 (1999).

Although there may have been evidence to support alternate defenses, we find that defendant failed to assert her right to such defenses or establish that those defenses were substantial such that they might have made a difference in the outcome of the trial. *Ayres, supra*. Therefore, defense counsel's performance did not fall below an objective standard of reasonableness. *Pickens, supra* at 303.

*Bason*, 2002 WL 31012614 at *1-4.

Having reviewed the matter, this Court concludes that the Michigan Court of Appeals' decision is neither contrary to *Strickland* nor an unreasonable application of federal law or the

10

facts.  "Decisions as to what evidence to present and whether to call or question witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense."  *Chegwidden v. Kapture*, 92 Fed. Appx. 309, 311 (6th Cir. 2004).

The record before this Court indicates that trial counsel investigated several defenses, including diminished capacity, heat of passion, and battered woman's syndrome, prior to trial. Trial counsel investigated the case, reviewed the potential evidence, and elected to proceed with an accident defense.  At the close of the prosecution's proofs, counsel believed that the prosecution had not sustained its burden of proving that Petitioner was guilty of second-degree murder.  After consulting with Petitioner, she rested her case.  Given the nature of the evidence against Petitioner and the limited defenses available to her, the Court cannot conclude that trial counsel's conduct fell below that of a reasonably competent attorney.  Counsel reasonably decided to argue an accident defense and reasonably decided to forego calling additional witnesses at trial as no other witnesses could have offered testimony in support of that defense. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective.  *See, e.g., Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

Furthermore, as discussed by the Michigan Court of Appeals, Petitioner has not demonstrated that she was prejudiced by trial counsel's conduct under the standard set forth in *Strickland, supra*.  Simply stated, she has not shown that the other possible defenses were substantial or that any of those defenses would have altered the outcome at trial.  Petitioner is thus not entitled to habeas relief on her ineffective assistance of trial counsel claim.

B.    Sentencing Claim

11

Petitioner also claims that she is entitled to habeas relief because her sentence violates the principle of proportionality.  To the extent that Petitioner asserts that her sentence is disproportionate under state law, *see People v. Milbourn*, 435 Mich. 630, 636, 461 N.W.2d 1 (1990) (a criminal sentence must be proportionate to both the offense and the offender), she fails to state a claim for federal habeas relief.  *See Austin v. Jackson*, 231 F.3d 298, 300 (6th Cir. 2000) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994).  Moreover, Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining her sentence.  *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Petitioner is also not entitled to habeas relief on any claim that her sentence constitutes cruel and unusual punishment under the Eighth Amendment.  The United States Constitution does not require strict proportionality between a crime and its punishment.  *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks*, 209 F.3d at 583.  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  *Austin*, 213 F.3d at 302 (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).  "Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole."  *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).

Petitioner was sentenced to a term of 18 to 50 years imprisonment on her second-degree murder conviction.  As noted by the Michigan Court of Appeals, this sentence was within the sentencing guideline range, *see Bason*, 2002 WL 31012614 at *4, as well as the statutory maximum.  *See* Mich. Comp. Laws § 750.317.  Accordingly, this Court concludes that the trial

12

court acted within its discretion in imposing Petitioner's sentence and there is no extreme

disparity between her crime and sentence so as to offend the Eighth Amendment.  Habeas relief

is not warranted on this claim.

**V.      Conclusion**

For the reasons stated, this Court concludes that Petitioner is not entitled to federal

habeas relief on the claims presented.

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED** and

**DISMISSED WITH PREJUDICE**.


s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  June 28, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on
June 28, 2005, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager